**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SYLVESTER LATHAM,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-CV-0587-CVE-PJC** |
| | ) | |
| **TERRY MARTIN, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner Sylvester Latham is a state

prisoner appearing pro se. Respondent filed a response (Dkt. # 9) and provided the state court

record necessary for resolution of Petitioner's claims (Dkt. ## 9, 10, 11). Petitioner filed a reply

(Dkt. # 12). Petitioner also filed a "motion for the Court to decide matters under advisement for

ninety (90) days" (Dkt. # 13). For the reasons discussed below, the petition for writ of habeas

corpus is denied. Petitioner's motion for a ruling shall be declared moot.

### *BACKGROUND*

In 1987, Petitioner lived with his girlfriend, Sherry Brinkley, and her three children, two

boys, K.B. and T.B., and a ten year old daughter, A.B. Petitioner had lived with the family for five

(5) years. During those five years, A.B. claimed that Petitioner touched her vaginal area on more

than one occasion, rubbed his penis on her feet, and kissed her vaginal area. On December 23, 1987,

A.B. alleged that Petitioner inserted his penis into her vagina, then turned her over and inserted his

penis into her anus. Before A.B. had a chance to tell her mother what had happened, Petitioner left

the Brinkley home in the family car. The next day, after A.B. told her mother what had happened,

her mother took her to the hospital to be examined. The examining physician observed a two

millimeter long tear in the midline of the anterior fourchette, found the vaginal orifice was "6 x 9 mm in diameter with uneven, torn edges of hymen remnant," and described A.B.'s anus as normal.

On January 25, 1988, Petitioner was charged by Information filed in Tulsa County District Court, Case No. CF-1988-250, with First Degree Rape (Count 1) and Crime Against Nature (Forcible Sodomy) (Count 2). However, Petitioner had left town and could not be located. For that reason, he was not immediately arrested. In fact, he was not arrested until October 2009, almost twenty-two years later, when he was found living in Wichita, Kansas.[1] On August 23, 2010, a jury convicted Petitioner of First Degree Rape (Count 1), but acquitted him of Forcible Sodomy (Count 2). On September 7, 2010, the trial judge sentenced Petitioner in accordance with the jury's recommendation to twenty-five (25) years imprisonment. Petitioner was represented at trial by J. Brian Rayl and Chris Brecht, attorneys with the Tulsa County Public Defender's Office.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Stuart W. Southerland, he raised the following four (4) propositions of error in his brief-in-chief, filed March 9, 2011:

> Proposition One:    It was reversible error for the district court to admit evidence of prior "touchings" to demonstrate a common scheme or plan. The State failed to establish the commission of other crimes by clear and convincing evidence. Further, the probative value of the evidence was greatly exceeded by the danger of unfair prejudice, and served to deny Appellant the right to a fair trial pursuant to the Fourteenth Amendment to the United States Constitution.

---

[1]    Petitioner was located in 2009 after A.B.'s older brother, K.B., while working as a branch manager for Enterprise Rent-a-Car in Wichita, Kansas, recognized a customer as Petitioner's sister. K.B. asked the sister where Petitioner was living. She told K.B. that Petitioner lived in Wichita and gave him the name of the street where Petitioner could be found.

Proposition Two:     Multiple instances of prosecutorial misconduct served to deny Appellant the right to a fair trial in violation of the Fourteenth Amendment to the United States Constitution.

        1.      The prosecutor's reference to the alleged victim's torn vagina was misleading and ultimately prejudicial.

        2.      The prosecutor shifted the burden of proof.

        3.      The prosecutor bolstered the testimony of his witnesses.

Proposition Three:   The delay of over twenty years between the filing of charges and jury trial violated Appellant's Sixth Amendment right to a speedy trial pursuant to the United States Constitution.

Proposition Four:    The combined effect of error at Appellant's trial requires the reversal of his conviction or modification of his sentence.

(Dkt. # 9-1).  On May 25, 2011, appellate counsel filed a "request to file pro se supplemental brief out of time" (Dkt. # 9-2).  Petitioner sought to raise a claim of ineffective assistance of trial counsel for failing to preserve some of the issues presented on appeal.  Id. at 3.  In an unpublished summary opinion filed November 18, 2011, in Case No. F-2010-877 (Dkt. # 9-5), the OCCA rejected the direct appeal claims and affirmed the judgment and sentence of the trial court.  The OCCA also denied the request to file a pro se supplement brief out of time, finding that the brief was untimely by at least fifteen (15) days and Petitioner had not shown good cause for his failure to comply with the OCCA's rules.  Id. at 5.  Petitioner did not seek certiorari review at the United States Supreme Court.

On December 12, 2011, Petitioner filed his first application for post-conviction relief (Dkt. # 9-6).  The state district court denied the application on May 4, 2012.  (Dkt. # 9-7).  Petitioner appealed.  On September 10, 2012, the OCCA declined jurisdiction and dismissed the post-conviction appeal, based on Petitioner's failure to file his petition in error within thirty (30) days of

the district court's order, as required by Rule 5.2(C)(2), <u>Rules of the Oklahoma Court of Criminal Appeals</u>.  (Dkt. # 9-9).

On February 27, 2013, Petitioner filed a motion for post-conviction appeal out of time (Dkt. # 9-10).  By Order filed May 3, 2013 (Dkt. # 9-11), the state district court recommended that Petitioner's request for a post-conviction appeal out of time be denied.

Next, on March 11, 2013, Petitioner filed a second application for post-conviction relief (Dkt. # 9-12).  That application was denied on May 3, 2013 (Dkt. # 9-13).  Petitioner appealed and identified the following instances of ineffective assistance of appellate counsel as his grounds for relief:

| | |
|---|---|
| Instance No. 1: | Petitioner received ineffective assistance of appellate counsel when counsel failed to raise a claim of ineffective assistance of trial counsel.  Trial counsel was ineffective when it [sic] failed to raise a pre-trial motion on Petitioner's U.S. Constitutional speedy trial violation. |
| Instance No. 2: | Petitioner received ineffective assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel.  Trial counsel was ineffective when it [sic] failed to present evidence that Petitioner did not flee the jurisdiction to avoid being prosecuted. |
| Instance No. 3: | Petitioner received ineffective assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel.  Trial counsel was ineffective when he failed to raise an objection on fou[r] specific issues. |
| Instance No. 4: | Petitioner received ineffective assistance of appellate counsel when counsel failed to raise a claim of ineffective assistance of trial counsel.  Trial counsel was ineffective when it [sic] failed to present evidence important to Petitioner's case. |
| Instance No. 5: | Petitioner received ineffective assistance of appellate counsel when counsel failed to raise a claim of ineffective assistance of trial counsel. Trial counsel was ineffective when it [sic] failed to request that the State provide transcripts for A.B.'s videotaped police interview. |

(Dkt. # 9-14).  On July 24, 2013, in Case No. PC-2013-482, the OCCA affirmed the denial of post-conviction relief, citing state law and finding that "Petitioner's propositions of error either were or could have been raised in his previous application for post-conviction relief, and are thus barred or waived.  He has not established any sufficient reason for not asserting or inadequately raising his current grounds for relief in his previous application for post-conviction relief."  (Dkt. # 9-15 (citations omitted)).

On September 5, 2013, Petitioner filed his federal petition for writ of habeas corpus (Dkt. #1).  He raises the following grounds of error:

Ground 1:    The delay of 22 years between charges being filed and Petitioner's arrest violated his right to a speedy trial as guaranteed by the Sixth Amendment to the U.S. Constitution.

Ground 2:    The prosecuting attorney committed reversible error when he misstated facts in his closing argument statements.

Ground 3:    The Attorney General's knowing use of the procedurally barred information (that Petitioner had committed anal sodomy on A.B.) to persuade the OCCA to affirm Petitioner's conviction violated his due process rights to a fundamentally fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.

Ground 4:    The trial court erred when it admitted other crimes evidence that was not established clearly and convincingly as required by Oklahoma law.

Ground 5:    Multiple instances of ineffective assistance of appellate counsel violated Petitioner's due process rights to a fundamentally fair direct appeal as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution.

Id.  In response (Dkt. # 9), Respondent asserts that Petitioner's claims do not justify habeas relief under 28 U.S.C. § 2254(d), are not cognizable in this habeas proceeding, or are procedurally barred.

*ANALYSIS*

**A.       Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes, see Dkt. # 9 at ¶ 5, and the Court agrees that, with the exception of his ground 3 claim, Petitioner fairly presented the substance of his claims to the OCCA on direct and post-conviction appeal.  Therefore, the Court finds that the exhaustion requirement is satisfied as to grounds 1, 2, 4, and 5.  28 U.S.C. § 2254(b).  As discussed in Part C below, Petitioner's unexhausted ground 3 claim is denied on the merits.  28 U.S.C. § 2254(b)(2).

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

**B.       Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-87 (2011)); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Further, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated grounds 1, 2, and 4 on direct appeal. See Dkt. # 8-3. Therefore, the § 2254(d) standard applies to this Court's analysis of those grounds.

**1.      Right to speedy trial (ground 1)**

As his first proposition of error, Petitioner claims that the delay of almost twenty-two (22) years between charges being filed in 1988 and his arrest in 2009 violated his right to a speedy trial.

See Dkt. # 1 at 6.  Petitioner did not raise this claim prior to trial.  Defense counsel first mentioned the possibility of filing a motion to dismiss for speedy trial violation after the State rested during trial.  See Dkt. # 10-4, Tr. Vol. II at 364.  The next day, during the instructions conference, the trial judge acknowledged that Petitioner had filed a motion to dismiss for lack of a speedy trial and overruled the motion.  See Dkt. # 10-5, Tr. Vol. III at 426-27.  On direct appeal, the OCCA applied the four (4) balancing factors identified in the seminal Supreme Court case, Barker v. Wingo, 407 U.S. 514, 530 (1972), and found that "this delay did not violate Appellant's constitutional right to a speedy trial."  (Dkt. # 9-5 at 4-5).

The Sixth Amendment provides that criminal defendants "shall enjoy the right to a speedy public trial . . . ." U.S. Const. amend. VI.  In Barker, 407 U.S. at 530, the Supreme Court identified four factors that district courts must consider in determining whether a defendant has been denied a speedy trial in violation of the Sixth Amendment: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. Twenty years later, the Court revisited the issue in Doggett v. United States, 505 U.S. 647 (1992), and refined the inquiry that district courts must pursue. The Court stated that it is necessary for district courts to balance "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Id. at 651 (citing Barker, 407 U.S. at 530).  None of these factors alone is sufficient to establish a violation of the Sixth Amendment.  Instead, the Supreme Court declared that "these are related factors and must be considered together with such other circumstances as may be relevant." Barker, 407 U.S. at 533. When a defendant's constitutional right to a speedy trial has been violated, dismissal of the

indictment is the only remedy even when it allows a defendant who may be guilty of a serious crime to go free.  See id. at 522.

 As stated above, the OCCA's decision ultimately resulted from the balancing of the four Barker factors.  As a result, the Court cannot decide whether the OCCA's decision was objectively unreasonable without considering the relevant factors and the balancing of these factors. Therefore, the Court shall review the OCCA's finding on each of these four factors for the limited purpose of determining whether any finding is contrary to clearly established Supreme Court precedent or based upon facts that are clearly and convincingly erroneous in light of the state court record. Furthermore,

> Because speedy trial claims are subject to a balancing test, the fact that the OCCA may have made a finding on one or more of the factors contrary to clearly established Supreme Court precedent is insufficient to grant habeas relief. Habeas relief is only available if there is no possible balancing of the factors that both supports the OCCA's decision and is not contrary to clearly established Supreme Court precedent.

Jackson v. Ray, 390 F.3d 1254, 1260 (10th Cir. 2004).

### a.  Length of the delay

The first factor, the length of delay, operates as a "triggering mechanism" for consideration of the other three factors.  Barker, 407 U.S. at 530.  "Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." Doggett, 505 U.S. at 652 n.1. In extreme cases, the length of delay also bears on the fourth factor (prejudice to the defendant), since "the presumption that pretrial delay has prejudiced the accused intensifies over time." Id. at 652 (quoting Barker, 407 U.S. at 530).

Here, the OCCA found that "[t]he first factor, length of delay, is considerable and weighs in Appellant's favor."  (Dkt. # 9-5 at 4).  This Court agrees.  Nearly 22-year years passed between

the filing of the information on January 25, 1988, and Petitioner's arrest on December 10, 2009. That delay is extraordinary and triggers a full inquiry into the other three <u>Barker</u> factors. <u>Doggett</u>, 505 U.S. at 652 n.1. The OCCA's finding as to the first factor is not contrary to clearly established Supreme Court precedent or based upon facts that are clearly and convincingly erroneous in light of the state court record.

### b. Reasons for the delay

On direct appeal, the OCCA found that the second <u>Barker</u> factor, reasons for the delay, weighs against Petitioner. <u>See</u> Dkt. # 9-5 at 4. The state appellate court cited <u>Ellis v. State</u>, 76 P.3d 1131, 1139 (Okla. Crim. App. 2003), and explained that "[h]is flight from the jurisdiction in the days after the crimes were reported certainly contributed to the delay. Other reasons for the delay are unclear, but the State's negligence in apprehending Appellant weighs only slightly in his favor." (Dkt. # 9-5 at 4).

The government bears the burden of showing that it was free from culpability in the delay. <u>Jackson</u>, 390 F.3d at 1261. The court assesses the responsibility for the delay based on the level of government culpability. If the delay is a "deliberate attempt" to delay a trial for tactical reasons, this will weigh "heavily" in favor of a Sixth Amendment violation; negligence by the government is more "neutral" and weighs "less heavily," and the government must show a "valid reason" to "justify [an] appropriate delay." <u>Barker</u>, 407 U.S. at 531 & n.32; <u>see also</u> <u>United States v. Batie</u>, 433 F.3d 1287, 1291 (10th Cir. 2006) (recognizing that delay due to "[n]egligence and crowded court dockets . . . weigh less heavily against the government"). Further, the nature of the delay is considered in combination with its extent. <u>See</u> <u>Doggett</u>, 505 U.S. at 657 (government culpability

"compounds over time," since "our toleration of such negligence varies inversely with its protractedness.").

Where the criminal defendant is a fugitive, the Tenth Circuit has observed, "[a]lthough the government must make some effort to locate a fugitive defendant and bring him to trial, the effort need only be reasonable, not heroic." United States v. Anderson, No. 98-1256, 1999 WL 393658, *3 (10th Cir. 1999) (unpublished)[2] (citing United States v. Sandoval, 990 F.2d 481, 484-85 (9th Cir. 1993)). "Where the government's failure to locate the defendant results from his own flight from justice or deliberate disappearance, the delay is properly attributed to the defendant." Id. (citing United States v. Bagster, 915 F.2d 607, 611 (10th Cir. 1990). Furthermore, in determining whether the government is responsible for pretrial delay due to its failure to effect an earlier arrest of the defendant, "we must remember that hindsight is better than contemporaneous or foresight and Monday morning quarterbacking is a favorite sport of armchair strategists and litigating lawyers." United States v. Agreda, 612 F. Supp. 153, 158 (E.D.N.Y. 1985).

As discussed below, Petitioner did not raise his speedy trial claim until the last day of trial when it was summarily denied without a hearing. As a result, the State was never required to produce evidence and never addressed the efforts made, if any, to locate Petitioner. However, there is no evidence that the State engaged in deliberate delay in order to gain a tactical advantage. In his petition, Petitioner emphasizes that he remained in Tulsa, living at his sister Honey's house, for at least two weeks after the allegations were made. (Dkt. # 1 at 7). He makes the unsupported allegation that, when he did leave Tulsa, he told his sister Honey that he was going to Wichita to live

---

[2]        This and other unpublished opinions herein are not precedential but are cited for persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

with his sister Alice, and that if any law enforcement officers contacted Honey about the allegations, "she was to inform them where he was and how to contact him." Id. According to Petitioner, "Honey was never contacted by any law enforcement about the allegations, ever." Id. In his reply, Petitioner claims that "the State knew where Petitioner was and did not attempt to contact him." (Dkt. # 12 at 2). Petitioner also insists that because the Brinkley family knew that Petitioner had family living in Wichita, they knew that is where he could be found. Id. However, Petitioner's argument is merely speculation. Nothing in the record suggests that the Brinkley family in fact knew that Petitioner was living in Wichita, at least, not until October 2009 when K.B. recognized Petitioner's sister and learned that Petitioner lived in Wichita. Petitioner provides no evidentiary support for any his self-serving allegations. Those allegations do not change the fact that Petitioner deliberately left the jurisdiction within days of the incident resulting in serious criminal charges being filed against him. The OCCA made findings of fact that Petitioner's flight from Oklahoma in the days after the crimes were reported "certainly contributed to the delay," and that the State's negligence in failing to apprehend Petitioner weighed "only slightly in [Petitioner's] favor." (Dkt. # 9-5 at 4). Petitioner fails to rebut those findings of fact with clear and convincing evidence. As a result, the findings are entitled to a presumption of correctness. See Wilson v. Mitchell, 250 F.3d 388, 394-95 (6th Cir. 2001) (finding that state court determination of reasons for delay are presumed correct under § 2254(e)(1)). Petitioner has failed to demonstrate that the OCCA's adjudication of this factor, resulting in the finding that the reasons for the delay weigh against Petitioner, is contrary to clearly established Supreme Court precedent or based upon facts that are clearly and convincingly erroneous in light of the state court record.

### c. Petitioner's assertion of his right

The OCCA found that the third <u>Barker</u> factor, Petitioner's assertion of the speedy trial right, weighs against Petitioner. (Dkt. # 9-5 at 4). The record supports the OCCA's finding that Petitioner "asserted his right to a speedy trial only when the trial was almost over, though almost a year had elapsed between his arrest and trial." <u>Id.</u> The OCCA characterized Petitioner's explanation for his belated assertion as "feeble and unconvincing." <u>Id.</u>

As a result of Petitioner's belated assertion of his speedy trial claim, there was no hearing in the trial court and no evidence regarding the reasons for the delay was developed. In his petition, Petitioner blames trial and appellate counsel for failing to raise the speedy trial violation promptly. (Dkt. # 1 at 8). He asserts the same claims in his reply (Dkt. # 12 at 3). However, Petitioner first raised his claim of ineffective assistance of trial counsel for failing to file a pretrial objection to the alleged Sixth Amendment violation in his untimely pro se appellate brief. (Dkt. # 9-3 at 2). The OCCA refused to consider the claims raised in that brief based on Petitioner's failure to comply with the OCCA's rules governing submission of pro se briefs. (Dkt. # 9-5 at 5). Similarly, Petitioner did not raise a claim of ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel until his second post-conviction appeal. (Dkt. # 9-14 at 17-19). As discussed in more detail in Part D below, the OCCA applied state law and refused to consider the claims of ineffective assistance of appellate counsel as a result of Petitioner's failure to raise the claims in his first application for post-conviction relief. (Dkt. # 9-15 at 3). The procedural bars imposed by the OCCA were independent and adequate to preclude federal habeas corpus review of Petitioner's ineffective assistance of trial and appellate counsel claims. Furthermore, Petitioner has

failed to demonstrate cause and prejudice or a fundamental miscarriage of justice to overcome the procedural bars.

Petitioner offers no other reason for his failure to raise his speedy trial claim promptly. As noted by the OCCA, "almost a year had elapsed between his arrest and trial." (Dkt. # 9-5 at 4). Yet he did not raise his claim until the last day of trial. This delay, while not dispositive, weighs significantly in favor of a finding that Petitioner's speedy trial rights were not violated. See Dearstyne v. Mazzuca, 2011 WL 12068204, *11 (N.D.N.Y. March 3, 2011) (unpublished); Burress v. Henderson, 814 F. Supp. 313, 322 (W.D.N.Y. 1993) (citing Barker, 407 U.S. at 531-32, and finding that waiting until first day of trial to assert right to speedy trial insufficient to warrant relief sought). Petitioner has failed to demonstrate that the OCCA's adjudication of this factor, resulting in the finding that Petitioner's failure to assert promptly his right to a speedy trial weighs against him, is contrary to clearly established Supreme Court precedent or based upon facts that are clearly and convincingly erroneous in light of the state court record.

### d. Prejudice suffered by Petitioner

The OCCA also found that the fourth Barker factor, prejudice suffered by Petitioner, weighs against Petitioner. (Dkt. # 9-5 at 4). According to the OCCA, "[h]is incarceration was not oppressive for this type of case; he has not claimed any undue anxiety from the unresolved charges; and he has not shown that he was impaired in his ability to present his defense." Id.

In Doggett, the Supreme Court addressed the amount of prejudice that a defendant must prove when the government is negligent in its pursuit and prosecution of a defendant. Unlike a bad-faith delay, from which prejudice is presumed, or governmental exercise of reasonable diligence, from which actual prejudice must be proven, "our toleration of . . . negligence varies

inversely with its protractedness . . . and its consequent threat to the fairness of the accused's trial."
Doggett, 505 U.S. at 657.  In other words, the longer the delay that is traceable to the state's conduct, the more prejudice that will be presumed.  However, where, as in this case, the delay is primarily due to Petitioner's own evasion, and where, as discussed above, his failure to raise the speedy trial claim promptly resulted in a lack of evidentiary development of factors contributing to the delay, he is not entitled to a presumption of prejudice.  He instead must produce evidence showing that he was actually prejudiced by the delay.  In Doggett, the Supreme Court identified three principal types of harm which could arise from an unconstitutional delay: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence."  Id. at 654.

Here, the Court finds that Petitioner has failed to demonstrate that he was prejudiced by the delay.  Petitioner was not subjected to oppressive pretrial incarceration.  He does not allege that he suffered "anxiety and concern" during the twenty-two years his arrest warrant was pending.  Lastly, Petitioner has not shown in this habeas action that his defense was impaired as a result of the delay.  Instead, Petitioner cites United States v. Toombs, 574 F.3d 1262, 1275 (10th Cir. 2009), and argues that he is not required to demonstrate prejudice due to the extreme delay in this case.  Although Petitioner is correct that, in some cases where the delay is extreme, prejudice is presumed, this case does not qualify because, as discussed above, the delay is attributable to Petitioner.  Where prejudice is not presumed, "[t]he individual claiming the Sixth Amendment violation has the burden of showing prejudice."  Id.  Petitioner has failed to carry his burden.  Petitioner has failed to demonstrate that the OCCA's adjudication of this factor, resulting in the finding that Petitioner's

conclusory allegations are insufficient to demonstrate prejudice as contemplated by <u>Barker</u>,[3] is contrary to clearly established Supreme Court precedent or based upon facts that are clearly and convincingly erroneous in light of the state court record.

In summary, the extraordinary 22 year delay between the filing of the information and the commencement of trial was sufficient to trigger the examination of the remaining three <u>Barker</u> factors. However, those factors weigh against Petitioner. Petitioner did not timely assert his right to a speedy trial, his own actions significantly contributed to the delay, and he has not carried his burden of demonstrating prejudice. Therefore, the Court finds that Petitioner has failed to demonstrate that the OCCA's adjudication of this claim is contrary to clearly established Supreme Court precedent or based upon facts that are clearly and convincingly erroneous in light of the state court record. Petitioner's request for habeas corpus relief on ground 1 shall be denied.

### 2.    Prosecutorial misconduct (ground 2)

In his second ground of error, Petitioner claims that the prosecutor improperly misstated facts during his closing argument. (Dkt. # 1 at 11). Specifically, Petitioner alleges that the prosecutor misstated the examining physician's testimony when the prosecutor asked "[w]hat is a 10-year old being raped vaginally worth where her vagina is torn?" <u>Id.</u> On direct appeal, the OCCA reviewed this claim for plain error and found that "[t]he prosecutor's arguments about the victim's torn vagina were fair comments on the evidence and not plain error." (Dkt. # 9-5 at 3).

---

[3]    The Court notes that, in the motion to dismiss for lack of speedy trial filed in the trial court on the last day of trial, <u>see</u> Dkt. # 10-8, O.R. at 95-101, defense counsel argued that Petitioner was prejudiced by the delay because during the early 1990s, the Tulsa Police Department freezer containing the rape kit evidence collected from A.B. thawed, resulting in contamination and loss of the evidence. <u>Id.</u> at 96. Defense counsel speculated that Petitioner "could have benefitted from said evidence." <u>Id.</u> However, Petitioner does not raise that claim in this habeas corpus proceeding.

"Prosecutorial misconduct can result in constitutional error if it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" DeRosa v. Workman, 679 F.3d 1196, 1222 (10th Cir. 2012) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006). To determine whether a trial is rendered fundamentally unfair, the Court examines the entire proceeding, "including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase," as well as "[a]ny cautionary steps – such as instructions to the jury – offered by the court to counteract improper remarks." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002). "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

To grant habeas relief, the Court must conclude that the OCCA's ruling "was not merely wrong but unreasonable." See Dockins v. Hines, 374 F.3d 935, 940 (10th Cir. 2004). The Court cannot draw that conclusion in this case. The Court agrees with the OCCA that the prosecutor's

statement regarding the victim's vaginal tear does not warrant relief.[4] That comment, when viewed in the context of the entire trial, did not result in a fundamentally unfair trial. Petitioner has failed to demonstrate that the OCCA's conclusion was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas corpus relief on Petitioner's claim of prosecutorial misconduct shall be denied.

**3.      Other crimes evidence (ground 4)**

As his fourth proposition of error, Petitioner claims that the trial court erred in admitting other crimes evidence. (Dkt. # 1 at 13). Specifically, Petitioner claims that he trial court improperly admitted evidence that Petitioner had sexually assaulted the victim prior to the incidents of rape giving rise to the criminal charges filed against him. On direct appeal, the OCCA denied relief on this claim, finding as follows:

> Appellant failed to preserve this claim by a contemporaneous objection at trial, waiving all but plain error. *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 692. The record reflects that the district court admitted the evidence under the "common scheme or plan" exception to the general rule against evidence of other crimes, wrongs, or bad acts. 12 O.S.2001, § 2404(B). Evidence that Appellant committed prior sexual assaults is also generally admissible in a prosecution for rape

---

[4]      The Court notes that, throughout his habeas petition, Petitioner misrepresents statements made by both Dr. Geffen at trial and appellate counsel on direct appeal. To support his claim that there was insufficient evidence of vaginal penetration, Petitioner cites to his direct appeal brief and states that Dr. Geffen testified that there was "absolutely no bruising or tearing of A.B.'s hymen." See, e.g., Dkt. # 1 at 11, 14, 18, 22, 24. First, appellate counsel did not state that A.B.'s hymen was intact. (Dkt. # 9-1 at 17-19). Furthermore, the "Examination and Observation Report" prepared by Dr. Geffen when he examined A.B. on December 24, 1987, and reviewed by Dr. Geffen at trial, reflects that A.B.'s "vaginal orifice [was] 6 x 9 mm diameter with uneven, torn edges of hymen remnant." (Dkt. # 10-6 at 5). During trial, Dr. Geffen read that statement out loud to the jury. (Dkt. # 10-4, Tr. Vol. II at 288). The word "remnant" means "small part, member, or trace remaining." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1990). Thus, the record demonstrates that only a remnant, or a small part or trace, of A.B.'s hymen remained. Neither the report nor Dr. Geffen stated that A.B.'s hymen was intact, as now claimed by Petitioner.

and sodomy against a child, and "may be considered for its bearing on any matter to which it is relevant" pursuant to either 12 O.S.Supp.2007, section 2413or 2414. *James v. State*, 2009 OK CR 8, ¶ 11, 204 P.3d 793, 798. Admission of Appellant's prior acts of molesting the victim was not plain error.

(Dkt. # 9-5 at 2).

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)). In addition, the Tenth Circuit Court of Appeals has found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due-process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law." Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting McGuire, 502 U.S. at 75). Because the OCCA applied the same test required for a due process determination, this Court defers to its ruling unless it "unreasonably appli[ed]" that test. Id. (citing 28 U.S.C. § 2254(d)). A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973).

After reviewing the record in this case, the Court finds Petitioner has not made the necessary showing. The record reflects that the jury heard the victim testify that Petitioner had committed other acts of sexual abuse in the five (5) years preceding the incidents giving rise to the criminal charges against Petitioner. See Dkt. # 10-3, Tr. Vol. I at 174-78. The jury also viewed the videotape of the January 5, 1988 interview of the victim. See Dkt. # 10-4 at 361. During that interview, the victim described other instances of sexual abuse committed against her by Petitioner. See Dkt. # 11. Significantly, the trial judge admonished the jury on the limited use of the other crimes evidence two times: first, after the victim testified, and second, after the jury viewed the videotape of the victim's 1988 interview. See Dkt. # 10-3, Tr. Vol. I at 223; Dkt. # 10-4, Tr. Vol. II at 361. Under the facts of this case, the Court agrees with the OCCA's finding that the admission of the complained of evidence was not "plain error" and did not render Petitioner's trial fundamentally unfair. Petitioner's request for habeas corpus relief on ground 4 shall be denied.

**C.     Habeas corpus relief is denied on ground 3**

In ground 3, Petitioner complains that, to persuade the OCCA to affirm his conviction, the Attorney General (AG) improperly argued on direct appeal that Petitioner had anally sodomized the victim, even though the jury had acquitted him of that charge. See Dkt. # 1. In the "Statement of the Facts" section of the direct appeal brief (Dkt. # 9-4), the AG cited the victim's trial testimony and wrote that "[h]e pulled her legs apart and raped her then turned her over and committed anal sex on her (Tr. 202). The defendant was very aggressive and the act was very painful for young A.B.

(Tr. 202)." (Dkt. # 9-4 at 3). Petitioner argues that the inclusion of those two sentences resulted in a violation of the Double Jeopardy Clause.[5] (Dkt. # 1 at 13).

As stated in Part A above, this claim has not been presented to the state courts and is unexhausted. However, Petitioner's ground 3 claim is patently without merit and is denied on that basis even though the claim is unexhausted. 28 U.S.C. § 2254(b)(2). The Double Jeopardy Clause of the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This amendment is intended to prevent a defendant from receiving successive punishments or being subjected to successive prosecutions for the same offense. United States v. Dixon, 509 U.S. 688, 704 (1993). The inclusion of the victim's testimony in the factual summary section of the State's direct appeal brief served to provide background for the OCCA's resolution of Petitioner's claims. The OCCA was aware, from Petitioner's direct appeal brief,[6] that Petitioner had been charged with and acquitted of sodomizing the victim in Count 2. The OCCA did not alter the jury's acquittal on that count, nor did the OCCA modify Petitioner's sentence entered on his Count 1 conviction. Petitioner was not subjected to a successive prosecution for the offense of which he was acquitted, nor did he receive successive or

---

[5]  To the extent Petitioner argues that the AG violated OCCA rules governing preparation of the direct appeal brief, the claim is based on an error of state law and is not cognizable on habeas corpus review. McGuire, 502 U.S. at 67.

[6]  In the "Case Background" section of Petitioner's direct appeal brief, appellate counsel informed the OCCA that Petitioner had been charged with and acquitted of Crime Against Nature in violation of Okla. Stat. tit. 21, § 886. See Dkt. # 9-1 at 7. Furthermore, in the "Factual Summary" section of the brief, appellate counsel wrote that A.B. "awoke to find Sylvester Latham pulling down her jogging pants and underwear. According to A.B., he inserted his penis in her vagina. Appellant then turned her over onto her stomach and inserted his penis in her anus." Id. at 9 (citation to record omitted).

even enhanced punishment as a result of the statements found in the State's brief. There was no

double jeopardy violation. Petitioner's request for habeas corpus relief on ground 3 shall be denied.

## D.     Procedural bar (ground 5)

In ground 5, Petitioner alleges that he received ineffective assistance of appellate counsel.

See Dkt. # 1 at 17-25. These claims were presented to the OCCA for the first time in Petitioner's

second post-conviction appeal. See Dkt. # 9-14. The OCCA found that:

> Petitioner's propositions of error either were or could have been raised in his
> previous application for post-conviction relief, and are thus barred or waived. He
> has not established any sufficient reason for not asserting or inadequately raising his
> current grounds for relief in his previous application for post-conviction relief.

See Dkt. # 9-15 at 3 (citations omitted).

The doctrine of procedural default prohibits a federal court from considering a specific

habeas claim where the state's highest court has declined to reach the merits of that claim on

independent and adequate state procedural grounds, unless petitioner can "demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that

failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v.

Thompson, 501 U.S. 722, 724 (1991); see also Matthews v. Workman, 577 F.3d 1175, 1195 (10th

Cir. 2009); Maes, 46 F.3d at 985; Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).

Applying the principles of procedural default to these facts, the Court concludes that

Petitioner's ground 5 claims of ineffective assistance of appellate counsel first raised in his second

application for post-conviction relief, are procedurally barred from this Court's review. The state

court's procedural bar as applied to these claims was an "independent" ground because Petitioner's

failure to comply with state procedural rules was "the exclusive basis for the state court's holding."

Maes, 46 F.3d at 985. In addition, the OCCA routinely bars ineffective assistance of counsel claims

that could have been but were not raised as part of a prior post-conviction appeal. As a result, the bar imposed by the OCCA on the claims raised in ground 5 was based on state law grounds adequate to preclude federal review. See Smallwood, 191 F.3d at 1268 n.8 (citing Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir. 1998)).

Because of Petitioner's procedural default of his ineffective assistance of appellate counsel claims, this Court may not consider the claims unless Petitioner is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750. The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

In reply to Respondent's response, Petitioner states that Respondent is "incorrect" that his claims of ineffective assistance of appellate counsel claims are procedurally barred. (Dkt. # 12 at 7-8). He argues that he raised the claims on post-conviction appeal where they were adjudicated by the State's highest court. Id. Petitioner misunderstands and conflates the concepts of exhaustion and procedural bar. Petitioner satisfied the exhaustion requirement when he raised his claims of ineffective assistance of appellate counsel in his second post-conviction appeal. However, the OCCA did not adjudicate the claims on the merits. Instead, the OCCA refused to adjudicate the

claims on the merits and imposed a procedural bar based on Petitioner's failure to raise the claims in his first post-conviction proceeding. The Court finds Petitioner's misunderstanding does not provide "cause" for his failure to raise his defaulted claims of ineffective assistance of appellate counsel as part of his first post-conviction proceeding.

Petitioner may also overcome the procedural bar by demonstrating a fundamental miscarriage of justice. However, the fundamental miscarriage of justice exception to the doctrine of procedural bar is applicable only when a petitioner asserts a claim of actual innocence. Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); see also Schlup v. Delo, 513 U.S. 298, 321 (1995). To meet this test, a criminal defendant must make a colorable showing of factual innocence. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup, 513 U.S. at 316. Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime . . . . [Or where] it is evident that the law has made a mistake.'" Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995) (citation omitted). Nowhere in his petition does Petitioner claim to be actually innocent of the crime for which he was convicted. The Court acknowledges that Petitioner testified at trial and denied raping the victim. See Dkt. # 10-4, Tr. Vol. II at 392. However, in this habeas action he presents no new evidence of

actual innocence.  Therefore, Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claims of ineffective assistance of appellate counsel are not considered, the Court concludes that ground 5 is procedurally barred. Coleman, 501 U.S. at 724.  For that reason, Petitioner's request for habeas corpus relief on ground 5 shall be denied.

**E.     Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the

decision by the OCCA is debatable among jurists of reason. See Dockins, 374 F.3d at 938. As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2. Petitioner's "motion for the Court to decide matters under advisement for ninety (90) days" (Dkt. # 13) is **declared moot**.

3. A separate judgment in favor of Respondent shall be entered in this matter.

4. A certificate of appealability is **denied**.

5. The Clerk of Court is directed to send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals as it relates to Tenth Circuit Case No. 14-5137.

**DATED** this 11th day of December, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE